UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, White and Frucci
Argued at Lexington, Virginia

JAMES DAVID FANNON

MEMORANDUM OPINION[*] BY
v.      Record No. 2001-23-3      JUDGE STEVEN C. FRUCCI
JANUARY 21, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SCOTT COUNTY
John C. Kilgore, Judge

Robert M. Galumbeck (Galumbeck Stiltner & Gillespie, Attorneys,
on brief), for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

After being charged with passing a bad check, obtaining money by false pretenses,

uttering a forged instrument, forgery, fraud in a commercial dealing with the government, and

money laundering, Fannon entered into a plea agreement that deferred the disposition under

Code § 19.2-298.02 for two years and required him to pay restitution to Scott County. At the

end of the two-year period, Fannon had not paid any restitution. As a result, the circuit court

found he had not complied with his deferred finding conditions, convicted Fannon as charged,

and sentenced him to 15 years of incarceration with 10 years suspended. Arguing that the circuit

court erred in convicting him and in ordering restitution, Fannon appeals. Because Fannon

waived his right to appeal, we affirm the circuit court's ruling.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Fannon, along with a business partner, formed Mountain Top Timber Products, LLC ("Mountain Top"), which operated a wood chipping mill in Scott County, Virginia, to procure and chip wood and sell it to local paper chip mills. To fund its operations, Mountain Top received loans and grants from multiple state and county economic development authorities.[1] Mountain Top hired companies for transportation, installation, and purchase of equipment for its wood chipping mill. Most of the companies Mountain Top hired required payment in advance. For payment, Mountain Top would write a check to these companies and then it would submit an invoice to the Scott County Economic Development Authority ("SCEDA") to get the check reimbursed. Prior to starting Mountain Top's project, Fannon consulted with a former SCEDA executive who informed him that there would be "funds dropped" to assist in the project.

However, after the project started, Fannon was informed that in fact there would be no funds dropping in advance and SCEDA would only reimburse Mountain Top after an invoice was received. Following, Fannon submitted fraudulent bills and invoices to the SCEDA to receive "reimbursement" in advance. On February 17, 2019, the landlord locked up the wood chipping facility because Mountain Top had not paid its rent for that month. Mountain Top was

---

[1] Although the funding was received by multiple authorities, the money was ultimately handled by the Scott County Economic Development Authority.

forced into involuntary bankruptcy the following month. Two months later, Fannon was indicted for passing a bad check, obtaining money by false pretenses, uttering a forged instrument, forgery, fraud in a commercial dealing with the government, and money laundering.

On August 11, 2021, Fannon and the Commonwealth presented a plea agreement to the circuit court. Under the plea agreement, Fannon would plead guilty to passing a bad check, obtaining money by false pretenses, uttering a forged instrument, forgery, fraud in a commercial dealing with the government, and money laundering, and the circuit court would find the evidence sufficient to support a finding of guilt but would take the matter under advisement for a period of two years conditioned on Fannon's compliance with specific terms. The specified terms included being of good behavior for two years and until "any further review dates the [circuit c]ourt may set," being placed on and complying with supervised probation, entering into a payment plan with the circuit court for all restitution, fines, and costs on the day the plea agreement was accepted by the circuit court, timely appearing for any review dates, and abiding by a Fourth Amendment waiver contained in the agreement. Additionally:

> [Fannon] shall pay restitution in an amount determined by a forensic auditor, accountant, CPA, or other qualified individual [Accountant] selected by the Commonwealth, unless otherwise agreed to by the parties. [Fannon] shall co-operate fully with the forensic auditor. Full payment of restitution within the two-year period is a necessary but not sufficient condition for reduction of the charge(s) as set forth in [the plea agreement]. Full cooperation with the audit is a necessary but not sufficient condition for reduction of the charge(s) as set forth in [the plea agreement. Fannon] must fully satisfy all of the conditions within two years unless the Commonwealth expressly agrees otherwise.

> i. [Fannon] shall provide all financial information and documents requested by the Accountant and the Accountant shall interview [Fannon] regarding the conduct alleged in the entirety of the indictments against him. [Fannon] shall be completely truthful in all respects throughout the audit process.

- 3 -

If Fannon complied with all of the specified conditions, then he would be convicted of six misdemeanors[2] instead of the six felonies. However, if he did not successfully abide by all of the terms and conditions, then he would be convicted of all six counts as charged. The plea agreement also contained language in which Fannon acknowledged that he was waiving his right to appeal. Specifically, the plea agreement stated, "[Fannon] agrees not to file any appeal, attack, or motion in this case except by agreement with the Commonwealth."

The circuit court accepted the plea agreement and entered a deferred disposition order. The order found the evidence sufficient to establish guilt but deferred the disposition until a later date and set a review date for August 15, 2022, to review Fannon's progress in complying with the conditions. Also, after the circuit court accepted the plea agreement, Fannon agreed to start paying $100 a month for three months, at which time the parties would see if the audit had been completed yet.

One day before the review date, Fannon moved the circuit court for a hearing to set restitution. The following day, August 15, 2022, the circuit court entered an order of restitution, ordering Fannon to pay $1,252,187.12. After this order was entered, the circuit court set a restitution review hearing for September 22, 2022, which was later continued to October 22, 2022; however, the record does not indicate whether a hearing was held on that date or not. Fannon signed the order and agreed to pay the $1,252,187.12, with a notation on a supplemental, handwritten sheet incorporated in the order that stated the circuit court would review the amount of restitution at a hearing on September 22, 2022. Prior to the hearing scheduled for September 22, 2022, Fannon filed two additional motions for the circuit court to have a hearing to set

---

[2] Specifically, he would be convicted of passing a bad check, obtaining money by false pretenses, sending an electronic message that causes another to spend money, no benefit, making a false statement affecting savings institution, making a false statement to obtain property or credit, and converting cash for compensation, into electronic funds, first offense.

restitution. In his motions, Fannon contended that the auditor, who determined the amount of restitution, conducted the audit incorrectly. Hence, Fannon moved the circuit court to allow the parties to present evidence and adjust the amount of restitution accordingly.

On August 21, 2023, the parties appeared before the circuit court to address the deferred disposition.[3] In addition to allegedly violating his good behavior conditions, the Commonwealth argued that Fannon failed to pay any restitution. Though he never requested his obligation to pay under the restitution order be removed, Fannon argued that no restitution was owed because the restitution amount was not tied to his actions. The circuit court found that further tracing the fees back to the conduct of Fannon was unnecessary because he conceded to that by entering the guilty plea, agreeing to make monthly payments, and signing the restitution order. Ultimately, the circuit court determined that although Fannon had agreed to and signed the restitution order, he failed to make any restitution payments, and, accordingly, Fannon was not successful in complying with the terms of the deferred disposition. As a result, the circuit court found him guilty as originally charged.

The matter was then continued to November 17, 2023, for sentencing to allow a presentence report to be prepared. Prior to the return date for sentencing, Fannon filed a motion to reconsider the circuit court's ruling on his violation of the plea agreement. Fannon argued, for the first time, that in fact there was no payment schedule for him to comply with, even though it was his obligation to enter into a payment plan with the circuit court and he had already agreed to make monthly payments. Fannon also then argued that the restitution amount could not be

---

[3] At the hearing, the Commonwealth stated that the circuit court had entered this restitution order at the agreement of the parties and that the handwritten supplemental sheet incorporated was only meant to give Fannon an opportunity to attach the amount if it was collected from a co-defendant or the county recovered it in some other fashion. Fannon did not object to this position, nor did he attempt to correct the Commonwealth's statement to the circuit court regarding the reason for the note or that the restitution order was entered with the agreement of the parties.

tied to his actions. On November 9, 2023, the circuit court addressed Fannon's motion and ruled that Fannon had not produced any evidence to reduce or eliminate the amount of restitution. Following, the circuit court heard argument as to the appropriate disposition.

On November 17, 2023, the circuit court convicted Fannon of passing a bad check, obtaining money by false pretenses, uttering a forged instrument, forgery, fraud in a commercial dealing with the government, and money laundering, and sentenced him to 15 years of incarceration with 10 years suspended and ordered him to pay approximately $1.26 million in restitution.[4] Fannon appeals, asking this Court to reverse and remand the case with instructions to set aside the conviction order, sentencing order, and restitution.

## ANALYSIS

On August 11, 2021, Fannon entered into a plea agreement with the Commonwealth. The plea agreement was signed by Fannon, his attorney, and the Commonwealth and included a waiver that said, "[Fannon] agrees not to file any appeal, attack, or motion in this case except by agreement with the Commonwealth." "Virginia has long held that a criminal defendant can waive 'his appeal of right' if the circumstances demonstrate 'his decision to waive his appeal was made knowingly, voluntarily, and intelligently." *Jones v. Commonwealth*, 293 Va. 29, 44 (2017) (quoting *Davidson v. Commonwealth*, 244 Va. 129, 131 (1992)).

In exchange for his guilty plea and waiver, by entering into a plea agreement with the Commonwealth, Fannon took advantage of the opportunity to reduce his felony charges to misdemeanors. Further, the circuit court expressly confirmed Fannon's understanding of his waivers at the plea hearing. Specifically, the circuit court stated "you would also have the right

---

[4] At Fannon's sentencing, the circuit court entered an additional restitution order for $8,747.28, which was owed to JCS Services, Inc., a private company not associated with the loans from the SCEDA. This additional order for restitution brings the total restitution amount on appeal to approximately $1.26 million.

to appeal any conviction on any of these charges to a higher court. Do you understand those rights?" Fannon answered "[y]es." The circuit court then asked, "[a]nd do you understand that your plea of guilty is a waiver of all of those rights?" Fannon responded "[y]es, sir." Notably, nothing in the record indicates, nor does Fannon argue, that the waiver of his right to appeal was not made knowingly, voluntarily, and intelligently. Moreover, Fannon's waiver in the plea agreement was for "any appeal," and therefore, he waived his right to appeal his conviction, sentencing, and the circuit court's determination of restitution. Thus, Fannon's argument that the circuit court erred in convicting as charged, sentencing him, and setting restitution is waived.

## CONCLUSION

The circuit court did not err in convicting Fannon of passing a bad check, obtaining money by false pretenses, uttering a forged instrument, forgery, fraud in a commercial dealing with the government, and money laundering, nor did the circuit court err in setting restitution because Fannon waived his right to appeal in his plea agreement. Therefore, the circuit court's judgment is affirmed.

*Affirmed.*